UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
(WESTERN DIVISION)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILSON COUNTY,<br><br>Defendant. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff United States of America ("Plaintiff" or "United States") alleges:

1. This action is brought on behalf of the United States to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII"). As set forth below, the United States alleges that Defendant, Wilson County ("Defendant" or "Wilson County"), engaged in retaliation in violation of Title VII when it terminated Jennifer Riddle ("Riddle") because of her complaints about the sexual harassment she experienced while employed by Defendant.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 42 U.S.C. §§ 2000e-5(f), 28 U.S.C. §§ 1331, 1343(a), and 1345.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of North Carolina, Western Division. Therefore, venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff United States is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e- 5(f)(1) and (3).

5. Defendant is a government body created pursuant to the laws of the State of North Carolina and is located within this judicial district.

6. Defendant maintains Wilson County Emergency Communications ("WCEC"), a county agency.

7. Defendant is a person within the meaning of 42 U.S.C. § 2000e(a).

8. Defendant is an employer within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## EEOC CHARGE AND AMENDMENT TO THE CHARGE

9. On September 14, 2017, Riddle filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination and retaliation. Riddle amended her charge to include additional factual details on February 17, 2018.

10. On September 20, 2018, the EEOC notified the County that it found reasonable cause to believe that the County had violated Title VII by retaliating against Riddle for engaging in protected activity.

11. On November 7, 2018, the EEOC notified the County that efforts to conciliate Riddle's charge were unsuccessful, and the matter was forwarded to the Department of Justice.

12. All conditions precedent to the initiation of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

13. WCEC is an emergency call center that handles all emergency calls for the public safety agencies within Wilson County, North Carolina.

14. WCEC employs state-certified telecommunicators ("TC") whose job is to field emergency phone calls and work to ensure that citizens receive appropriate emergency assistance.

15. When hired, TC trainees are assigned a TC trainer, who supervises the TC trainee for a training period of six to nine months until the TC trainee is ready for state-certification.

A. **WCEC's Assistant Director Sexually Harasses Riddle, and Riddle Complains**

16. On or around March 1, 2017, WCEC hired Riddle as a TC trainee.

17. On or around March 3, 2017, only a few days into the job, the Assistant Director of WCEC, Michael Cone ("Cone"), told Riddle he was in charge of giving her a work shirt.

18. He led her to a supply closet, handed her the shirt, and instructed her to try it on.

19. Riddle complied, pulling the work shirt over the shirt that she was already wearing. Cone responded by asking, "Why don't you take your shirt off for me?" When Riddle asked Cone to stop and began walking away, Cone then asked: "Don't you want to advance in your career?"

20. Riddle immediately complained of the Assistant Director's conduct to Training Coordinator Jennifer Etheridge ("Etheridge"). Etheridge told Riddle to ignore the behavior—that the Assistant Director "does these types of things all the time."

21. On or about April 28, 2017, Riddle's trainer, Brandon Wells ("Wells"), instructed her to accompany the Assistant Director on a visit to a site tower.

22. Riddle expressed discomfort at the thought of conducting a site visit alone with the Assistant Director. Nonetheless, her trainer ordered her to go.

23. During the visit, the Assistant Director repeatedly made sexual comments directed at Riddle, including, but not limited to: asking her whether she liked sex; commenting that

couples visit the site tower in order to have sex; saying that he had previously brought women there to have sex; and implying that he had requested she accompany him on the trip because he thought she was pretty.

**B.    Riddle Again Complains to Her WCEC Superiors about Sexual Harassment**

24.    Riddle returned from the site visit visibly shaken and upset.

25.    Initially, Riddle attempted to report the incident to Wells. Wells advised her to speak with Etheridge. When she did so, Etheridge directed her to speak with WCEC Director Brenda Womble ("Womble").

26.    Riddle reported (orally and in writing) Cone's behavior to Womble, who transmitted the complaint to the head of Wilson County Human Resources, Timothy Bilderback ("Bilderback").

27.    Womble asked Riddle to not disclose the harassment she experienced to anyone else while the investigation was ongoing.

**C.    WCEC Substantiates Cone's Harassment of Riddle, and He Resigns**

28.    On or around May 2, 2017, Womble and Bilderback met with Riddle to discuss her sexual harassment allegations against Cone. In response to Riddle's description of Cone's harassment, WCEC told Riddle that this was not the first time something like this had happened with Cone.

29.    On or around May 2, 2017, based on its investigation, WCEC substantiated the harassment and began the process of terminating Cone. He, however, retired before WCEC could complete the termination process.

30.    When Womble learned that Cone was retiring, she pulled Riddle aside and told her that the investigation was over and Cone had retired.

### D. Riddle Faces Hostility from Co-Workers and Supervisor after Cone's Departure

31. Cone had worked at WCEC for more than 30 years and was generally well liked there.

32. After his sudden departure, rumors began circulating among Riddle's co-workers and supervisors that Riddle was responsible.

33. Riddle's co-workers and her trainer, Wells, began treating her differently, excluding her from team dinners and rarely speaking directly to her.

34. Riddle brought her concerns to Ethridge, who told her that her co-workers probably knew about the incident with Cone and were, as a result, being extra cautious about how they interacted with her.

35. Wells, who had been told by other WCEC employees to "watch out for Riddle" because of her previous complaints of sex harassment, subjected her to increased disciplinary scrutiny.

36. In or around late June 2017, Wells approached Womble and told Womble that he believed Riddle needed a female trainer. He told Womble that he did not believe that Cone had harassed Riddle and was worried that she would accuse him next. Wells also told Womble that if Womble didn't transfer Riddle to a new shift, he would step down from the trainer position.

37. Womble agreed to transfer Riddle to a new shift under a new trainer.

### E. New Supervisors Ask Riddle about Cone's Sexual Harassment of Her

38. On or around August 7, 2017, Riddle began working on her new shift.

39. On Riddle's first night, her new trainer, Dee Young, asked for an explanation as to what had happened between Riddle and Cone.

40. When Riddle declined, Young insisted that as her supervisor she needed to know.

Page **5** of **10**
Case 5:21-cv-00310-FL   Document 1   Filed 07/28/21   Page 5 of 10

41. Riddle then described the first incident with Cone and how Etheridge had brushed it off, stating that kind of thing had previously happened with Cone. She also described the harassment she had experienced at the site tower, how she reported it, and how she had later been told that that was not the first time Cone had engaged in that kind of behavior. Riddle further explained that she was upset that Cone had been allowed to retire without facing any real discipline.

42. Young thanked Riddle for answering her inquiries and then reported the conversation to her shift supervisor, Christy Montes, and to Director Womble.

43. Womble asked Young to draft a memo memorializing her conversation with Riddle.

44. On August 22, 2017, Womble received a memo from Young describing the substance of Riddle's sexual harassment complaints. The memo omitted the context of Riddle's complaints, including that Young had told Riddle that, as her supervisor, she needed to know what had happened with Cone. Womble forwarded the memo to Bilderback.

45. On or around August 25, 2017, WCEC decided to terminate Riddle for having discussed Cone's harassment with Young. On that date, Womble and Bilderback exchanged emails setting the date and location of Riddle's termination meeting.

46. On or around August 25, 2017, Riddle's shift supervisor, Montes, approached Riddle while she was on break. Montes told Riddle that she knew something had happened between her and Cone, and that that event had led to Cone's departure. Montes then asked Riddle what had happened.

47. Riddle told Montes she did not like to talk about it, but described the circumstances. She also expressed to Montes how she was upset that no disciplinary action had

been taken against Cone.

48. Montes wrote up an email summarizing her conversation with Riddle and sent the email to Womble on August 27, 2017.

**F.     WCEC Personnel Policies**

49. At all times relevant to this action, the Sexual Harassment Policy that applied to WCEC employees was the policy set out in the Wilson County Personnel Resolution (dated Jan. 2015).

50. At all times relevant to this action, the Confidentiality Policy that applied to WCEC employees was the policy set out in the Wilson County Personnel Resolution (dated Jan. 2015).

**G.     WCEC Terminates Riddle**

51. On August 28, 2017, WCEC called Riddle into the WCEC HR office and summarily terminated her.

52. The personnel action form terminating her employment with WCEC accused Riddle of violating the County's sexual harassment policy on the date Riddle spoke to Young, as set out in paragraphs 39 through 42 of this Complaint.

53. WCEC never asked Riddle (or Young or Montes) any questions as to the circumstances in which she made the disclosures.

54. WCEC never asked Riddle (or Young or Montes) any questions as to what prompted Riddle's disclosures.

55. WCEC conducted no investigation before deciding to terminate Riddle.

56. WCEC's Sexual Harassment Policy, as referenced in paragraph 49 of this Complaint, does not forbid a victim of sexual harassment from discussing her harassment with

her supervisors.

57. Riddle had no job performance problems at WCEC and was not terminated for unsatisfactory performance.

58. On information and belief, Bilderback was concerned that Riddle's complaints about Cone's behavior represented a potential liability to the County.

## STATEMENT OF CLAIM
42 U.S.C. § 2000e-3(a)
Retaliation

59. Plaintiff realleges and reincorporates by reference paragraphs 13 through 58.

60. Defendant retaliated against Riddle in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a):

   a. Riddle engaged in protected activity under Title VII when she complained to WCEC management and her supervisors regarding the sexual harassment she experienced at WCEC and WCEC's failure to effectively deal with her harasser through its investigative and disciplinary process.

   b. As a result of her complaints, Defendant isolated Riddle, subjected her to increased disciplinary scrutiny, transferred her to a different shift, and, ultimately, terminated her.

   c. A causal connection exists between Riddle engaging in protected activity and Defendant's termination of her employment.

   d. Defendant's articulated reasons for terminating Riddle are pretextual to cover up its retaliation.

61. Riddle has suffered emotional distress, pain and suffering, inconvenience, loss of enjoyment of life, humiliation, and other non-pecuniary damages as a result of Defendant's

retaliatory acts.

62. Riddle has also suffered monetary loss as a result of Defendant's retaliatory acts.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States prays that the Court grant the following relief:

A. Award all appropriate monetary relief, including lost wages where applicable, to Jennifer Riddle in an amount to be determined at trial to make her whole for any loss suffered as a result of the retaliation alleged in this complaint.

B. Award Riddle any prejudgment interest on the amount of lost wages and benefits determined to be due.

C. Award compensatory damages to Riddle to fully compensate her for the pain and suffering caused by Defendant's retaliation as alleged in this complaint, pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

D. Enjoin Defendant from further retaliation against Riddle.

E. Order Defendant to develop and implement appropriate and effective measures to prevent retaliation, including, but not limited to: (1) instituting effective anti-retaliation policies and procedures; (2) distributing its anti-retaliation policies to all employees; (3) implementing appropriate anti-retaliation training to all employees and officials; (4) providing mandatory anti-retaliation training for all supervisors and employees.

F. Order any further relief necessary to make Riddle whole.

G. Award such additional relief as justice may require, together with the United States' cost and disbursements in this action.

## **JURY DEMAND**

The United States hereby demands a trial by jury of all issues so triable pursuant to Rule

38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42

U.S.C. § 1981a.

Dated: July 28, 2021

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

KAREN WOODARD
Chief
Employment Litigation Section
Civil Rights Division

CLARE GELLER
Deputy Chief
Employment Litigation Section
Civil Rights Division

/s/ *Christopher Woolley*
CHRISTOPHER WOOLLEY
VENDARRYL JENKINS
CA Bar No. 241888 (Woolley)
DC Bar No. 1724928 (Jenkins)
Trial Attorneys
United States Department of Justice
Employment Litigation Section
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 305-3203
christopher.woolley@usdoj.gov

*Attorneys for Plaintiff United States of America*